**MORGAN et al. v. HUNLEY et al.**

**No. 12611.**

Court of Civil Appeals of Texas.

Galveston.

March 18, 1954.

Rehearing Denied April 29, 1954.

J. E. Winfree, L. Edward Mooney, Kelley & Ryan and C. O. Ryan, Houston, for appellant.

Bracewell & Tunks and J. S. Bracewell, Houston, for appellee.

CODY, Justice.

It is appellees' position on this appeal that this is an action on behalf of the Parker Memorial Methodist Church (formerly called Central Methodist Church) against its agent and former pastor, the Reverend Mr. C. W. McPhail, and his associates consisting of L. D. Morgan and J. F. McPhail, both of Lubbock, to account for secret profits made in connection with the sale of real estate located in Houston at the intersection of Wayside and Harrisburg. Because of the tacit abandonment by appellees of certain of the issues made by their pleadings, it is deemed best to set out, before any discussion of the pleadings, some of the salient and undisputed facts.

The Parker Memorial Methodist Church, formerly called Central Methodist Church, will hereafter be referred to simply as the Church. On the property of the Church there was located the church building proper, the youth building, the Sunday school building, the parsonage, and a filling station, on that portion of the property which had been leased to the Sinclair Oil Company. Prior to March 2, 1945, the Church had obtained another site in the City of Houston on which it proposed to erect its church buildings. On March 2, 1945 the church's Quarterly Conference (being its governing body under the discipline of the Methodist Church), appointed a committee to consider selling the Church's property located at Wayside and Harrisburg. On March 14, 1945 the Sinclair Oil Company made its first offer to purchase that part of the property which was occupied by it, being 100 x 150 feet for $60,000. Other offers to purchase parcels out of said property were received.

Early in 1946 pursuant to the Methodist Church discipline, Pastor McPhail announced a Quarterly Conference for February 3, 1946, to consider offers of purchase made in connection with the aforesaid property. These offers included a new one by the Sinclair of $80,000 for the same property for which it had formerly offered $60,000, and an offer by an undisclosed principal to purchase the entire property for $110,000. On the same day that he had announced the meeting of the Quarterly Conference, as aforesaid, Pastor C. W. McPhail left for California on certain business of the Methodist Church. He went by way of Lubbock where his brother, J. F. McPhail, lived and was engaged in and assocated with L. D. Morgan, in the real estate business. C. W. McPhail discussed with his brother, J. F. McPhail, the proposed sale of the Church property. J. F. McPhail expressed interest in the proposed sale. In returning from California C. W. McPhail passed through Lubbock and was told by J. F. McPhail that L. D. Morgan was going to make an offer for the purchase of the Church property. Morgan did offer $120,000 for the entire property, together with the privilege of the Church remaining in the possession of the property for 18 months.

The Church, through its building committee, made a counter-offer to L. D. Morgan, which contemplated selling to him the entire property for $125,000 with the right to retain the occupancy for Church purposes of the portions of the property which were then being so occupied for two years. The building committee had no power to make a binding offer to sell on said terms but Morgan wired his agreement to those terms. At the Quarterly Conference meeting of February 3, 1946, the building committee recommended that Morgan's last offer of $125,000 plus two years free occupancy be accepted. By a vote of 20 to 7 the Quarterly Conference agreed to accept said offer. The terms of the sale were duly approved in writing by the District Superintendent who presided over the Quarterly Conference, all in conformity with the Methodist Church discipline. A formal written contract of sale dated February 4, 1946, was placed in escrow together with a cashier's check for $5,000. Thereafter, on August 30, 1946, the trustees of the Church executed to Morgan a deed covering the parcel which Sinclair had offered to buy for $80,000. Morgan thereafter sold said parcel, less a strip of 30 x 100 feet, to Sinclair for $80,000. He paid a commission on said sale of $4,000. On October 4, 1947 the final payment which Morgan was obligated to pay under the contract of sale was made to the Church.

From time to time rumors spread among the members of the Church that their pastor, C. W. McPhail, in some way stood to share in the profits which would be realized or were being realized on the sale of the parcels of land. Over a period of two and one-half years Morgan completed the resale, in parcels, of the entire property which he had purchased from the Church, for the gross sum of some $175,000. It was established without dispute that real estate values steadily increased in Houston during this period.

On April 29, 1950, certain members of the Church brought an action to recover the land, and in the alternative to recover from C. W. McPhail, and his brother J. F. McPhail, and Morgan, the profits made on the resale of the property in parcels. Said plaintiffs alleged that they were bringing the suit for and on behalf of the Church and not for their own benefit. The Church was made a formal party defendant so as to bind it by any judgment which might be rendered in the suit. On February 11, 1953, the fourth original amended petition was filed and it was in this petition that the Church for the first time joined as plaintiff. We think no purpose would be served by stating the issues which were tendered in said pleading because all of said issues, except as hereafter shown, were tacitly abandoned when the court submitted the case to the jury on special issues. At the conclusion of the trial the appellants, C. W. McPhail, J. F. McPhail and L. D. Morgan, moved for a directed verdict. After the coming in of the verdict they also moved for judgment notwithstanding the verdict. Said motions were overruled. The court submitted the case to the jury upon 15 special issues; the first seven of said special issues were plaintiffs', or appellees', special issues and special issues Nos. 8 to 15, inclusive, related to the statute of limitations. Special Issue No. 1 reads: "Do you find from a preponderance of the evidence that C. W. McPhail in acting as agent for Central Methodist Church in the sale of the property in question had any intention prior to October 4, 1947 to make for himself a personal profit as the result of said transaction?" To which the jury answered, "We do." The jury found, in answer to special issue No. 2 that prior to October 4, 1947 J. F. McPhail knew, etc. that C. W. McPhail intended to make a personal profit out of the sale. In answer to special issue No. 3 the jury found that prior to October 1, 1947 L. D. Morgan knew, etc., that C. W. McPhail intended to make a personal profit out of the sale. In answer to special issues Nos. 4, 5, 6 and 7 the jury found, respectively: (4) that C. W. McPhail made a profit of $20,000, (5) that prior to October 4, 1947 there was an agreement among the McPhails and Morgan to divide the profits made out of the transaction, (6) related

back to special issue No. 5, and specified that L. D. Morgan and J. F. McPhail entered into the agreement so inquired about in special issue No. 5, (7) that the amount of the profit made by the parties to the agreement so to share profits was $60,000. The special issues relating to limitations were as follows: (8) that the Church could have discovered, in the exercise of due diligence, more than two years prior to February 11, 1953, that an agreement had been made by the appellants to divide the profits from the sale, (9) that the Church could not have made such discovery more than four years before February 11, 1953, (10) that the Church could have discovered that C. W. McPhail intended to make a profit out of the transaction more than two years before February 11, 1953, (11) but further found that the Church could not have made such discovery more than four years before February 11, 1953, (12) that the individual plaintiffs could have discovered more than two years prior to August 29, 1950 the intention of C. W. McPhail to make a personal profit out of the sale, (13) that the jury further found said plaintiffs could not have discovered such fact more than four years before August 29, 1950, (14) that said individual plaintiffs could have discovered more than two years prior to August 29, 1950 any agreement by L. D. Morgan and J. F. McPhail, or either of them, to divide with C. W. McPhail profits to be made out of the resale of the property sold by Central Methodist Church, (15) the jury further found that said individual plaintiffs could not have made such discovery more than four years prior to August 29, 1950.

Upon the findings of the jury, the court rendered judgment for the Church against appellants jointly and severally for the sum of $60,000, together with interest thereon from October 4, 1947 at the rate of 6% per annum.

In their points 1 to 6, inclusive, appellants urge (1) that the court should have directed a verdict for appellants, (2) that there were no pleadings by appellees to authorize the submission of special issues Nos. 1 through 7, respectively, (3) that there was no evidence to authorize the submission of said special issues, (4) that the evidence was insufficient to authorize such submission, (5) that the answers to said special issues as well as the answers to special issues Nos. 9 and 11 were not supported by any evidence, (6) that the answers to said special issues were against the great weight and preponderance of the evidence.

We have carefully examined appellees' pleadings. They would warrant the submission of special issues as to whether the Church placed the property here involved in the hands of C. W. McPhail for sale? and whether C. W. McPhail did associate himself in making the sale with J. F. McPhail and L. D. Morgan? and whether the Church and its officers were under the influence and control of C. W. McPhail? But we confess we can find no basis in appellees' pleadings for placing any significance on the date of October 4, 1947, in the special issues submitted to the jury on behalf of appellees. That was the date on which Morgan paid off his final indebtedness due under the contract of sale which was dated February 4, 1946. The date of the contract of sale fixed the right of the parties with reference to the ownership of the property here involved. And any agreement, if any was made, between C. W. McPhail and Morgan to share profits after the ownership of the property had passed to Morgan, on February 4, 1946, by virtue of the contract of sale, was a matter in which the Church could have no interest. In any case, any agreement by C. W. McPhail made after February 4, 1946 and before October 4, 1947, to share in the profits would be of no concern to the Church. It would unnecessarily extend the length of this opinion to rule on each of appellants' points 1 to 6, because, under the evidence and findings of the jury, the action, if any the Church may have had against appellants, is barred by the two-year statute of limitations, plead by appellants.

 The two-year statute which bars the Church's action is Art. 5526, § 4, Ver-

278

non's Ann.Civ.St. This because, if C. W. McPhail acted as agent for the Church in the sale of its property, and realized any secret profits therefrom, he and his associates became indebted to the Church in contemplation of the statute, not later than the date of such profits. See Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S.W. 40. Of course the Church's claim would not become barred by the statute until it discovered, or in the exercise of due diligence could have discovered, an agreement of C. W. McPhail with J. F. McPhail and Morgan to divide profits made on the resale of the property. The jury found upon ample evidence that the individual members who instituted the action on August 29, 1950, by the exercise of due diligence, could have discovered the claim of the Church to recover from appellants more than two years before they filed suit. If it should be said that the running of the statute was suspended by the filing of the suit brought on behalf of the Church on August 29, 1950, by individual members of the Church, then said members acted as agents for the Church in such action, and the Church cannot ratify their action without having imputed to it the knowledge which their agents had in that connection.

The Church alleged that its officers were under the influence and control of its pastor, C. W. McPhail, at all material times. Whether a Quarterly Conference, which is the governing body of a Methodist Church for such matters as buying or selling property, when presided over by the District Superintendent, could be found to have been under the domination of the Church's pastor is not before us for determination. But the Church cannot, in the absence of a finding by the jury of such alleged "undue influence" exerted by the pastor, excuse the late filing of the suit by it. Certainly no such finding by the judge in support of the judgment can be presumed.

The judgment of the trial court is reversed, and we hold that the Church take nothing by its action.

Reversed and rendered.